Milligan, J.,
delivered the opinion of the Court.
This is a hill of revivor, filed in the Chancery Court at Nashville, against the executors of Joseph M. Swan, deceased, to revive a cause brought by bill in that Court, by the complainant in this case, against her husband, Joseph M. Swan, in his lifetime, for divorce and alimony, and to cause a decree for a divorce a vinculo, which, as it is alleged, rested, in the former ease, in the breast of. the Court, but was never announced, to be now declared, and entered nunc pro tunc. The application is one of singular novelty, and the argument on both sides, has been conducted wth great research and ability.
The record in the original .cause is not before us; hut enough appears from this record, to warrant the belief, that this unfortunate controversy is but a repetition of those relentless contests, that sometimes arise, even in the higher walks of life, which shock the moral sense of the community in which they occur.
The original bill, as it appears from the references made to it in the hill of revivor, charges the husband with adultery, cruel and inhuman treatment, and wilful desertion and abandonment. To this the husband *536 responded, and filed a cross bill. In his answer, he denies the charges in the original bill; and although the allegations in the cross bill do not fully appear in this proceeding, it is plainly inferable, that they consisted in the customary charges, in such eases, of re-crimination. The cross bill was answered, and a temporary allowance made for the support of the wife, pending the litigation. Proof was taken on both sides, and the cause regularly set down for hearing at the November Term, 1864; when, in consequence of the feeble health of the Chancellor, it was agreed by both parties, that three distinguished members of the bar, should be selected, who should hear and decide the cause, according to the rules and principles of law and equity that govern such cases; and their decision, or a majority thereof, was to be entered as the decree of the Chancellor. This extemporized tribunal was organized, and the cause regularly submitted to its determination. After argument, time was taken to deliberate, and a day fixed upon which the decree should be announced. But before the day upon which the opinion was to be delivered, and after, as it is alleged in the bill, two of the referees had agreed that the complainant was entitled to a divorce from the bonds of matrimony, all further action was suspended, on account of the dangerous illness of the husband, who shortly thereafter died. No decree was ever announced, either by the referees or by the Chancellor; and this bill, as before stated, seeks to revive the original cause against the executors of the husband, Joseph M. Swan, deceased, to have the *537 decree for divorce, a vinculo, entered now for them, and permanent alimony set apart out of the estate of the husband for his widow. The defendants demurred to the bill, which was sustained by the Chancellor, and the hill dismissed, from which there is an appeal in error to this Court.
It is proper to say, that it further appears in the bill, that Joseph M. Swan, in his lifetime, was possessed of a large estate, most of which consisted in money, bonds, and obligations to pay money, and which amounted to about $75,000; and that before his death, by deeds inter vivos and Will, he disposed of his entire estate, without, in any manner, providing for his wife, except one-third interest in the house and lot upon which she resided in the city of Nashville, worth, as we may infer from the record, about $6,000.
Under this state of facts, various questions are presented in argument, among which, the first deemed necessary to be noticed, is, the right of the complainant to an order, directing the unannounced decree for divorce a vinculo, to be entered nunc pro tunc.
To sustain this position, various authorities have been referred to and relied on in argument; but, upon examination, none of them appear to carry the doctrine so far as it is contended for in this case. The English practice of drawing up, passing and entering decrees, is so different from ours, that but little direct authority can be drawn from them, which is applicable to the practice in this country. Most of the American cases will be found to rest upon applications made during the term, or upon a peculiar state *538 of facts, which leave no doubt as to the entire provisions of the decree, and the reasons which prevented its enrollment. But no case, we apprehend, can be found, where a Court, either in England or America, has gone so .'far as to order a decree which had never been announced, after the close of the term, and the lapse of a whole year, and the death of the party against whom it is to be entered, to be declared and entered as before the death of the party, and of the term at which the cause was argued. Such a practice, would, indeed, be anomalous to, if not altogether un.precedented in, the history of equity jurisprudence in this country. But in this case there was no decree. The Chancellor at no time heard the cause. The tribunal, whose partial opinion is sought to be declared as the decree of the Chancellor, and, as such, entered nunc pro tunc, was, to all intents and purposes, an arbitration, clothed with power, by the consent of the parties, to hear and determine the whole cause, and report the result of their determination to the Chancellor; which was, by the terms of the submission, to become the decree of Court. By the Statute, Code, sec. 3446, an award is required to be in writing; and the loose declaration of even a majority of the referees, as in this case, is wholly, insufficient to satisfy the positive requirements of the law. The Court, to whom the award is formally submitted, may, by the plain provisions of the Statute, Code, sec. 3448, reject it, for any- legal or sufficient reason, or re-commit it for re-hearing to the same or other arbitrators, agreed upon by the parties. The whole cause *539 was referred to the arbitrators; hut it is not pretended that anything was agreed upon, hut the rights of the complainant to a divorce a 'vinculo. No alimony, either temporary or permanent, was determined upon, and nothing was reduced to writing. The award was incomplete, and, as an award, - binding upon neither party. But the case would not have been materially changed, had all the formalities of the law been, complied with.
The Chancellor must, have heard the cause, even after the award. Arbitrators have no power, under the Statute, to grant divorces or set apart alimony, without the concurrence of the Court. The Code, sec. 2465, 2467 and 2468, in substance, expressly provides, if the Court, upon hearing the cause, is satisfied that the complainant is entitled to relief, it may be granted according to the ' circumstances of the case. Tlie marriage may be declared null and void ab initio, or the bonds of matrimony dissolved forever, or a perpetual or temporary separation declared; within either case, such support and maintenance to the complainant, as the nature of the case and the circumstances of the parties may require. We are, therefore, of the opinion, that the declaration of the arbitrators, in no aspect in this case, was such a decree, as a court of equity could, under any circumstances, after the close of the term, order to be entered as the decree of the Chancellor nunc pro tunc. No decree for a divorce having been pronounced, none can now be entered. The prayer of this bill in that respect, has been answered by the *540 inevitable decree of a tribunal higher than any earthly forum. The marriage relation is dissolved forever, and all litigation between the original parties must cease. The husband, by his deeds inter vivos, and the execution of his last will, has disposed of all his property, and left his widow, as it is urged in argument, without an adequate and just support. Must she now fail in the further prosecution of her bill for alimony? The peculiar character and hardship of this case is presented with great force and plausibility, but that can have no influence either the one one way or the other. The law is neither swayed by sympathy, or warped by prejudice. The same general principles which govern similar cases must control this. The plain, simple question, is this: Can a bill for divorce and alimony, brought in the lifetime of the husband, be revived, under our Statutes, after his death, for alimony against his personal representatives ?
The marriage contract, in all Christian countries, is peculiar, and in many respects, different from all others. It is for life, and the parties themselves have no power to dissolve it. The public has a direct interest both in the contract and its dissolution, not only on account of the good order and morality of the State, but on account of the increase and growth of its population. In Scotland, (and formerly, and perhaps still, in some of the States of the Union,) it is provided by Statute, (24 and 25 Vic., ch. 86, sec. 8,) “that it is competent for the Lord Advocate to enter an appearance as a party in action of decía- *541 ration of nullity of marriage or of divorce; and to lead suck proof, and enter such., pleas as he may consider warranted by the case:” 2 Bishop on Marriage and Divorce, 4th ed., sec. 230. Mo such provision exists in our Statutes; but the marriage contract, by our law, is placed upon grounds wholly different from any other civil agreement. The legal representative of the State, it is true, cannot in divorce cases, interpose as a party on behalf of the public, but the Court before whom an application for a divorce is tried, is bound, under our Statutes, to see that all the substantial provisions of the law are complied with, before it is authorized to dissolve the conjugal relation.
Alimony, in the Ecclesiastical Courts, was only granted in case of divorce a mensa et thoro, and to continue during the joint lives of the parties. The marriage, in such cases, was allowed to be valid and operative, to vest the husband with the wife’s property, and consequently impose upon him the reciprocal duty of supporting her during the existence of the matrimonial obligation. But even in England, where the divorce was a vinculo, which was only declared where the marriage was adjudged void, ab initio, the woman’s property remaining unaffected by the void marriage, was always, as far as practicable, restored to her.
Under the English practice, it is perfectly apparent, both upon principle and authority, that no alimony can be granted, except as an incident to a divorce, a mensa et thoro; and, when granted, was only that allowance out of the husband’s estate, which was judi *542 cially allotted to the wife for her support and maintenance during the separation; and of necessity continued during the separation, or the joint lives of the parties: Bishop on Marriage and Divorce, secs. 549— 550; Rogers vs. Venn, 6 Hide, 293-297. It follows, as a necessary consequence, “that a suit for alimony, unaffected hy the special legislation of the State, does not survive, and the wife cannot, therefore, after the death of her husband, bring her bill against the administrator, she having neglected to enforce her remedy in his lifetime. Even when a proceeding has been commenced during his life, it abates at his death, and cannot be carried on against his administrators:” Bishop on Marriage and Divorce, sec. 559, and authorities there cited. See also 2 Des. Eqt. R., 205. Gaines vs. Gaines,' executors and heirs, 9- Ky. R., 295.
But it is insisted that our Statutes totally change the English practice, as well as the general law, upon the subject of divorce and alimony; and that a bill for alimony will lie, independent of an application for a divorce, and as such, on the death of the husband, does not abate, but may be, under the Code, section 2845, revived against his personal representatives. The Code, as well as our Statutes, passed previous to its adoption, in many important particulars, has changed the English practice. By section 2465, the Court is authorized, on hearing the cause, to grant such relief as the complainant may be entitled to, “either by pronouncing the marriage null and void from the beginning, or by dissolving it forever, and freeing each party from the obligations thereof, or by separation *543 for a limited time.” And by sections 2467, 2468 and 2469, the Court may grant to the wife relief, “by annulling the marriage, or ordering a separation, perpetual or temporary, or such other decree as thé nature and circumstances of the case may require. In either case, “whether the marriage be dissolved absolutely, or a perpetual or temporary separation be decreed, the Court may make an.order and decree for the suitable support and maintenance of the complainant and her children, or any of them, by the husband, or out of his property, according to the nature of the ease, and the circumstances of the parties.
This allowance may be decreed to the wife, if the separation is perpetual, in solido, absolutely, or if otherwise, to be paid to her at stated periods, for a limited time, or for life. It may consist of, a part of' the Husband's real or personal estate, or it may be charged upon the former, as the Court may, in its sound discretion, under the circumstances of the case, think proper, having reference to the property that the husband received from his wife at the time of the marriage, or afterwards, as well as to the separate property secured to her by marriage contract, or otherwise.
Under the broad and comprehensive provisions of these Statutes, the wife, as in the case of Niceby vs. Niceby, 3 Head., 184, on a proper case made out, may, through the intervention of a Court of Chancery, have a suitable maintenance decreed to her out' of her husband's estate, even without an application for a divorce or decree of separation. But this right arises out of the marital relation, and the obligation of the *544 husband to support and maintain his wife, so long as she remains unaffected by misconduct, and the conjugal relation exists. In such a case the power is conferred upon the courts of equity by Statute, and it comes in the place of the common law remedy, by action against the husband, in favor of any one who may, under proper circumstances, have supplied the wife with necessaries suitable to her rank and condition in life. But surely this right cannot, even under our liberal Statutes, be enforced after the death of the husband. On the happening of such an event, new rights instantly accrue to the widow, which are wholly different from her rights to alimony. The right to dower, and to a distributive share in the husband’s personal estate, begins when the right to alimony ends. Such has been the uniform ruling of the Court in all civilized countries. No precedent to the contrary has been produced, and we apprehend none can be found.
A contrary doctrine would. be at war with the settled practice of the State, and calculated to disturb the repose of society. Alimony, support or maintenance, either with or without an application for a divorce or separation, cannot be granted, unless the husband is brought before the Court, except in such cases as he cannot be served with process, and after bill or petition charging and proving him guilty of such gross misconduct as violates his marriage vow. If this could be done after the death of the husband, in a suit brought against or revived in the name of his personal representatives, it would be in the language of the case in 2 Des. Equity R., 198, 209, “putting it *545 in the power of the living to accuse the dead of the grossest misconduct; and it is more than probable that an executor might be wholly unacquainted with the circumstances, and, therefore, incompetent to repel the charges or make a proper defense; whereas, if the husband was alive, it is possible he might be able to assign good and substantial reasons for his conduct, and rebut the accusations by the testimony of witnesses. No one ought to be condemned unheard. Audi alteram partum. is the language of reason, of common sense, and of the law.” There must be an end to litigation, and especially to these unfortunate family contests, that so seriously affect the offspring of unhappy parents who engage in them, and break the repose and good order of the society in which they occur. The fact that the right to alimony, so strenuously insisted on in argument, accrues to the wife at the time the husband commits the offenses which authorize her to bring her bill for divorce and alimony, can, in no sense, change the settled practice of all Courts, everywhere followed, in eases of this character. The right to divorce and alimony, or to alimony, alone, under our Statute, does not arise out of the marriage contract; for no suit, says Bishop, sec. 38, at law or equity, sounding in contract, and going to the Statute itself, can be maintained between, husband and wife during their lifetime; nor, after the death of one of them, will an action of this nature lie against the administrator of the deceased. A suit for divorce and alimony is a proceeding sui generis, founded on the violation of the duties which the law *546 enjoins, and always sounding in tort, and for the redress of private wrongs: Bishop, sec. 38, 300; 2 Des. Equity B., 208. It is strictly a personal action, sounding in tort, and by all the rules and maxims of law, lies with the person.
Such is the unbroken current of authorities, as Well as of reason, in this class ol cases, and we do not, in this case, incline to violate either the reason or authority of the cases.
Affirm the decree of the Chancellor.